KONENKAMP, Justice
(concurring in result).
[¶ 30.] I concur with the Court’s holding that Trooper Kurtz was entitled to ask Bonacker for his driver’s license, even after the trooper learned from Bonacker that the original reason for stopping the ear was mistaken. To investigate the headlight violation, the trooper first had to talk with the driver. It should make no difference if during the stop the trooper had inquired about the headlights either before or after asking to see Bonacker’s driver’s license. As the Court points out, during a lawful stop, within a reasonable time, investigating officers are not required to carry out their procedures in any particular order. To require otherwise would transform investigative stops into roadside rituals.
[¶ 31.] Where I differ with the Court is in its speculation about what the trooper could have done, might have believed, and may have investigated. Our function restricts us to determining whether a challenged seizure fell within constitutional and statutory limits. We should abstain from deciding the propriety of law enforcement actions not before us. Producing a driver’s license is a routine part of any traffic stop, and drivers are required by law to have it in their possession and display it on “demand of a ... peace officer.” SDCL 32-12-39. It is enough, therefore, to declare that the trooper’s timely request to see a driver’s license was within the scope of a lawful stop and “ ‘strictly tied to and justified by’ the circumstances which rendered its initiation permissible.” See Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983) (quoting Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968)) (additional citation omitted).